UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ELLEN HAMILTON, | ) | No. ED CV 08-444-PLA |
| Plaintiff, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) ) | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on April 11, 2008, seeking review of the Commissioner's denial of her application for Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on April 18, 2008, and August 11, 2008. Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 10, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on May 9, 1960. [Administrative Record ("AR") at 50-51, 65, 69.] She has a high school education [AR at 80, 275], and no past relevant work experience. [AR at 75, 274.]

On March 30, 2004, plaintiff protectively filed her application for Supplemental Security Income payments, alleging that she has been unable to work since October 5, 1991, due to hepatitis C, fibromyalgia, arthritis, joint pain, mental illness, muscle spasms, depression, and shoulder, neck, back, knee and leg pain. [AR at 65-68, 74, 108, 115.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 36, 50-64.] A hearing was held on September 5, 2006, at which time plaintiff appeared and testified on her own behalf. [AR at 237-64.] Plaintiff's husband also testified. [AR at 252-59.] A subsequent hearing was held on July 9, 2007, at which time plaintiff appeared and again testified on her own behalf. [AR at 265-80.] A vocational expert and a medical expert also testified. [AR at 268-76.] Plaintiff was not represented by counsel at either hearing. [AR at 239-41, 267.] On August 13, 2007, the ALJ determined that plaintiff was not disabled. [AR at 9-20.] Plaintiff requested review of the hearing decision. [AR at 6.] When the Appeals Council denied plaintiff's request for review on February 25, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 3-5.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

2

adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since March 30, 2004, the date of the application. [AR at 15.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: degenerative disc disease and arthritis of the cervical spine. [Id.] The ALJ noted that "[t]here is no basis for finding that [plaintiff] has a 'severe' mental impairment or for the imposition of any mental limitations that would preclude the performance of simple, unskilled work activities." [AR at 16.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to "perform medium work except she can only occasionally work above shoulder level with either or both upper extremities and only occasionally move the head to extremes." [AR at 16.] At step four, the ALJ concluded that plaintiff had no past relevant work. [AR at 19.] At step five, the ALJ found, based on the vocational expert's testimony and application of the Medical-Vocational Guidelines as a framework, that "there are jobs that exist in significant numbers in the national

---

   [1]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

economy that [plaintiff] can perform." [AR at 19.]  Accordingly, the ALJ determined that plaintiff is not disabled.  [AR at 20.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to: (1) properly consider plaintiff's assessed Global Assessment of Functioning ("GAF") scores of 50 and 55; (2) properly consider plaintiff's mental impairment; (3) make proper credibility findings; (4) pose a complete hypothetical question to the vocational expert; and (5) properly consider the lay witness testimony.  Joint Stipulation ("Joint Stip.") at 2-3.

**LAY WITNESS STATEMENTS**

As stated in 20 C.F.R. §§ 404.1513(d) and 416.913(d), the Social Security Administration will, "in addition to evidence from the acceptable medical sources . . . also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [her] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d).  Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4).  Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider.  See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see also Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or merely malingering . . . . While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight.").  To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so.  Dodrill, 12 F.3d at 919.  Failure to consider lay testimony will be considered harmless error only if "it [is] clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"  See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

On November 11, 2004, plaintiff's husband, Jimmie Dale Hamilton, completed a third-party "function report" concerning, among other things, plaintiff's daily activities and cognitive abilities. [AR at 96-104.] In the report, Mr. Hamilton indicated that he had known plaintiff for twenty-one years and spent "most of the time" with plaintiff. [AR at 96.] Mr. Hamilton noted that plaintiff's condition affects her ability to lift, squat, bend, stand, walk, kneel, remember, climb stairs, use hands, complete tasks, concentrate, understand, and follow instructions. [AR at 101.] Mr. Hamilton indicated that plaintiff can only pay attention for a very short time. [Id.] He further indicated that plaintiff has difficulty following written and spoken instructions, and is "very confused most of the time." [AR at 101.] As to plaintiff's ability to handle changes in routine, Mr. Hamilton stated that plaintiff has "no routine." [AR at 102.] He noted that plaintiff does not handle stress very well, loses her temper a lot, and is "moody." [AR at 102.] Mr. Hamilton indicated that plaintiff uses a brace or splint, a cane, and glasses or contacts all of the time. [AR at 102.] At the hearing on September 5, 2006, Mr. Hamilton testified that plaintiff's depression "is getting really bad." [AR at 254.] He stated that plaintiff "sits and cries a lot," she has a family history of suicide, and she has attempted to commit suicide a few times. [Id.] He indicated that plaintiff's last suicide attempt was six months prior to the hearing. [AR at 255.] Mr. Hamilton testified that plaintiff cannot work because she is in a lot of pain, is "depressed all the time," and does not want to get up and do anything. [AR at 256-57.] He also testified that plaintiff cannot get mental health treatment for her depression because she has no medical insurance that covers mental health issues. [AR at 257-58.] The ALJ in the decision discounted the lay witness statements of plaintiff's husband concerning the intensity, persistence, and limiting effects of plaintiff's symptoms as "not entirely credible." [AR at 18.]

The ALJ's rejection of the lay witness statements of plaintiff's husband as "not entirely credible," without more, is inadequate.[2] The testimony of lay witnesses, including family members,

---

[2] Defendant argues that "the third party report by [p]laintiff's husband was contrary to the medical findings and therefore, could not legally or reasonably be credited by an ALJ as reliable or believable." Joint Stip. at 21. Although inconsistency with the medical evidence may be a reason to reject lay witness testimony, the ALJ in his decision did not specifically present that reason as a basis for discounting the lay witness statements of plaintiff's husband. Indeed, the

about their own observations regarding the claimant's impairments must be considered and discussed by the ALJ. See Smolen, 80 F.3d at 1288; see also Sprague, 812 F.2d at 1232. Testimony from lay witnesses who see the claimant on a regular basis is of particular value. See Dodrill, 12 F.3d at 918-19; see also Smolen, 80 F.3d at 1289. The regulations clearly include "spouses" as "other sources" who may provide evidence. See 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). If an ALJ chooses to discount the statements of lay witnesses, he must provide reasons that are germane to each witness. See Dodrill, 12 F.3d at 919; see also Regennitter, 166 F.3d at 1298 (lay testimony "provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness") (citing Smolen, 80 F.3d at 1298); Smith v. Heckler, 735 F.2d 312, 313 (8th Cir. 1984) (if an ALJ rejects the subjective testimony of lay witnesses, he must specifically discuss the testimony and expressly make credibility determinations). Here, the ALJ did not specifically discuss the lay witness statements of plaintiff's husband and did not expressly identify what statements made by plaintiff's husband he rejected as not credible, or why those statements were not credible. Thus, the ALJ did not support his rejection of the lay witness statements with any reason germane to plaintiff's husband.[3]

---

ALJ merely found that the statements of plaintiff's husband were "not entirely credible," without any reference to the particular statements made by him. [AR at 18.] As such, defendant's *post hoc* attempt to justify the ALJ's failure to properly reject the lay witness statements of plaintiff's husband is not sufficient to cure the error. See Vista Hill Foundation, Inc. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985) (a reviewing court may affirm an administrative decision only on grounds articulated by the agency); see also Barbato v. Commissioner of Social Sec. Admin., 923 F. Supp. 1273, 1276 (C.D. Cal. 1996) (a court may remand if the decision of the ALJ as to a claimant's entitlement to benefits on its face does not adequately explain how a conclusion was reached, even if Social Security Administration can offer proper *post hoc* explanations for such unexplained conclusions). Moreover, to the extent the ALJ's rejection of the lay witness statements of plaintiff's husband was based on an inconsistency with the medical evidence, such a reason may be insufficient in this case as there appears to be evidence in the record to support the statements of plaintiff's husband regarding plaintiff's claims of exertional and non-exertional limitations. [AR at 150-73, 191-202, 204-10, 212-19, 224-26.]

[3] Defendant further argues that the statements of plaintiff's husband "are not inconsistent with the ALJ's RFC finding and [p]laintiff's ability to perform simple[,] unskilled work activities." Joint Stip. at 20-21. This argument fails. Plaintiff's husband stated that plaintiff is unable to work because she is "always depressed," and noted that her condition affects her ability to maintain

To the extent that the ALJ also rejected the lay witness statements of plaintiff's husband based on his conclusion that plaintiff was "not entirely credible," such a rejection is insufficient. [AR at 18-19.] Lay witnesses are competent to make "independent observations" of a claimant's pain and other symptoms. See Dodrill, 12 F.3d at 919 ("[t]hat the ALJ dismissed all the lay witness testimony solely because he found the claimant was not credible suggests he may have been under the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms."); see also Sprague, 812 F.2d at 1232 ("[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence."). Furthermore, an ALJ cannot reject lay witness testimony simply by rejecting the credibility of a claimant. See Schow v. Astrue, 272 Fed.Appx. 647, 653 (9th Cir. 2008) (ALJ failed to provide reasons for rejecting the lay witnesses' observations that were "'germane to each witness'" by relying heavily on the adverse credibility finding as to the claimant's testimony) (citation omitted); see also Michaels v. Massanari, 16 Fed.Appx. 751, 754-55 (9th Cir. 2001) (ALJ cannot properly discredit lay witness testimony solely because the claimant lacks credibility); see, e.g., Turner v. Apfel, 1998 WL 289288, at *12 (N.D. Cal. May 7, 1998) ("[t]he ALJ improperly rejected the lay witnesses' testimony because the ALJ judged the lay witnesses' credibility by her determination of [the claimant's] credibility.").

The ALJ's failure to properly reject the statements of plaintiff's husband -- who spent most of his time with plaintiff and has known plaintiff for twenty-one years -- was error. See Dodrill, 12 F.3d at 919 (lay witnesses who have the opportunity to observe the claimant on a daily basis can often ascertain whether the claimant is suffering or merely malingering); see also Smith v. Bowen, 849 F.2d 1222, 1226 (9th Cir. 1988) (testimony from someone in a position to observe a claimant's

---

attention and concentration. [AR at 101, 257.] Such limitations may not be compatible with limitations to simple, unskilled work. See, e.g., Lange v. Astrue, 2008 WL 4889896, at *19 (W.D. Wash. Nov. 12, 2008) (ALJ's statement that he accounted for the lay witnesses' reports of reduced concentration by limiting the claimant to simple, repetitive tasks was insufficient, as "[i]t is not at all clear that reduced concentration and a limitation to simple, repetitive tasks are synonymous"); Pena v. Astrue, 2008 WL 618969, at *5 (E.D. Cal. Mar. 3, 2008) (vocational expert testified that there would be no jobs for an individual that had the RFC to perform simple, repetitive tasks, but also had occasional problems with maintaining attention, concentration, and pace).

symptoms and daily activities is "'competent evidence.'") (citation omitted). Moreover, the ALJ's failure in this instance does not constitute harmless error because the statements of plaintiff's husband may have corroborated plaintiff's testimony or provided additional information that could have impacted the ALJ's determination regarding the severity of plaintiff's impairments and how those impairments affect plaintiff's ability to work. See Booz v. Sec'y of Health and Human Serv., 734 F.2d 1378, 1381 (9th Cir. 1984) (holding that the test for determining whether an error is harmless is "whether there is a reasonable possibility that [the new evidence] would have changed the outcome of the present case"); see also Robbins, 466 F.3d at 885 (harmless error applies only when it is clear from the record that an ALJ's error is "'inconsequential to the ultimate nondisability determination'") (quoting Stout, 454 F.3d at 1055-56). Indeed, the report completed by Mr. Hamilton lends some support to plaintiff's testimony regarding her inability to work. [AR at 96-104.] Notably, in the report, Mr. Hamilton stated that plaintiff's condition affects her ability to, among other things, stand, walk, kneel, remember, complete tasks, understand, and follow instructions. [AR at 101.] He noted that plaintiff uses a cane and a brace or splint. [AR at 102.] Mr. Hamilton also stated that plaintiff can only maintain attention for a very short time, is very confused most of the time, does not handle stress very well, and is "moody." [AR at 101-02.] Further, at the hearing, Mr. Hamilton stated that plaintiff is "always depressed," has attempted to commit suicide on a few occasions, is in a lot of pain, and does not want to get up to do anything. [AR at 254-57.] The Court cannot confidently conclude that no reasonable ALJ, if crediting the lay witness statements of plaintiff's husband, would have reached a different disability determination. See Ellison v. Astrue, 2008 WL 4425764, at *5 (C.D. Cal. Sept. 29, 2008) ("'where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the [plaintiff], a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.") (citing Stout, 454 F.3d at 1056).

/

/

Plaintiff further contends that the ALJ failed to properly consider the GAF scores of 50 and 55[4] assigned to plaintiff, as well as the existence of a severe mental impairment, i.e., depression. Joint Stip. at 3-4, 7-9, 11. Specifically, plaintiff asserts that the ALJ erred in finding that "[t]here is no evidence of a longitudinal history of a psychiatric impairment . . . ," and in rejecting plaintiff's mental complaints based on lack of treatment for depression.[5] Joint Stip. at 3-4, 7-9. In light of the Court's conclusion that the ALJ failed to properly consider the lay witness statements of plaintiff's husband (which addressed her mental condition), the ALJ is instructed on remand to thoroughly examine the record with respect to plaintiff's treatment for depression and address the relevance of the GAF scores in the medical record in determining whether plaintiff has a severe mental impairment.[6] Accordingly, remand is warranted.[7]

---

[4]   A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000). A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34. A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id.

[5]   In her disability reports on appeal, plaintiff alleged that she had no medical insurance. [AR at 108-09, 112-13, 115-16, 119-21.] During the hearing, both plaintiff and plaintiff's husband alleged that plaintiff was not eligible for medical insurance for mental health treatment. [AR at 257-59.] The ALJ at the hearing disputed the allegations regarding plaintiff's eligibility for medical insurance. [Id.] To the extent that the ALJ relied on plaintiff's lack of mental health treatment to reject the statements of plaintiff's husband, such reliance would be improper if plaintiff's inability to obtain mental health treatment was indeed based on her inability to pay for the treatment. See Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999) (the Ninth Circuit has "proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it") (citing Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir.1996)); see also Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) ("[d]isability benefits may not be denied because of a claimant's failure to obtain treatment he cannot obtain for lack of funds."). On remand, if the ALJ relies on her lack of treatment to support a decision, plaintiff's ability, or lack thereof, to obtain treatment must be resolved.

[6]   While a GAF score may not have a "direct correlation" to the Social Security severity requirements (see Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21, 2000)), a GAF score and its implications may not be

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider the lay witness statements of plaintiff's husband. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

DATED: February 24, 2009

/s/ Paul L. Abrams

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

ignored without sufficient reason. See, e.g., Olds v. Astrue, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008) (a low GAF score does not alone determine disability, but it is a piece of evidence to be considered with the rest of the record) (citation omitted); Escardille v. Barnhart, 2003 WL 21499999, at *5-6 (E.D. Pa. June 24, 2003) (ALJ's failure to address a GAF score of 50 "or its meaning regarding plaintiff's ability to maintain employment" was error); Dempster v. Astrue, 2008 WL 4381541, at *2 (C.D. Cal. Sept. 23, 2008) ("GAF scores can be probative of a claimant's mental health on a given day and should at least be acknowledged by the ALJ"); Blake v. Astrue, 2008 WL 2224847, at *6 (D. Kan. May 27, 2008) (a GAF score of fifty or less may suggest an inability to keep a job); Hacker v. Astrue, 2008 WL 4224952, at *5, n.2 (W.D. Okla. Sept. 10, 2008) (the ALJ erred by not addressing the GAF scores and explaining why they were not relevant).

[7] As the ALJ's consideration on remand of the lay witness statements of plaintiff's husband may impact on the remaining issues raised by plaintiff in the Joint Stipulation, the Court will not further address those issues in this Order.